United States District Court
Southern District of Texas

**ENTERED**

July 19, 2023

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


BRENT ANDERSON, TDCJ #1474470,    §
                                  §
            Plaintiff,            §
                                  §
v.                                §        CIVIL ACTION NO. H-21-3154
                                  §
BRYAN COLLIER,                    §
                                  §
            Defendant.            §


## MEMORANDUM OPINION AND ORDER

The plaintiff, Brent Anderson (TDCJ #1474470), has filed a Complaint (Docket Entry No. 1) against Executive Director Bryan Collier of the Texas Department of Criminal Justice ("TDCJ"), challenging the validity of a policy on prisoner correspondence under 42 U.S.C. § 1983. Now pending is Defendant Collier's Amended Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Defendant's Amended Motion to Dismiss") (Docket Entry No. 26), which incorporates Defendant Collier's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Defendant's Original Motion to Dismiss") (Docket Entry No. 11). Anderson has filed Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6) ("Plaintiff's Response") (Docket Entry No. 24) and Plaintiff's Memorandum in Response to Defendant's Amended Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(1)

and 12(b)(6) ("Plaintiff's Amended Response") (Docket Entry No. 43).

Collier has filed Defendant's Reply to Plaintiff's Response to

Defendant's Amended Motion to Dismiss Pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6) ("Defendant's Reply") (Docket

Entry No. 44). Anderson has filed Plaintiff's First Motion for an

Extension of Time to File Sur-Reply to Defendant's Reply to

Plaintiff's Response to Defendant's Amended Motion to Dismiss

("Plaintiff's Motion to File Sur-Reply") (Docket Entry No. 45), and

Collier has filed Defendant's Response in Opposition to Plaintiff's

Motion for an Extension of Time to File Sur-Reply (Docket Entry

No. 48). Anderson has filed Plaintiff's Reply to Defendant's

[Response in] Opposition to Plaintiff's Motion for an Extension of

Time to File Sur-Reply With Objections (Docket Entry No. 50).

Anderson has also filed a second Plaintiff's Motion for Leave to

File a Sur-Reply to Defendant's Reply to Plaintiff's Response to

Defendant's Motion to Dismiss ("Plaintiff's Second Motion to File

Sur-Reply") (Docket Entry No. 51), which includes Plaintiff's

Proposed Sur-Reply to Defendant's Reply to Plaintiff's Response to

Defendant's Motion to Dismiss ("Plaintiff's Sur-Reply") (Docket

Entry No. 51, pp. 16-28); and Collier has filed Defendant's

Response in Opposition to Plaintiff's Motion for Leave to File Sur-

Reply (Docket Entry No. 54). After considering all of the

pleadings and the applicable law, the court will grant the motions

to dismiss filed by the defendant for the reasons explained below.

## I.  Background

Anderson is currently incarcerated by TDCJ at the Estelle Unit in Huntsville,[1] where he is serving a sentence of life without parole for a capital murder conviction from Matagorda County.  See Anderson v. State, No. 13-07-00752-CR, 2009 WL 2915011 (Tex. App. — Corpus Christi-Edinburg Aug. 27, 2009, pet. ref'd).  He has filed this civil rights lawsuit against Executive Director Collier to challenge TDCJ Board Policy 03.91 ("BP-03.91"), which is also known as the Uniform Inmate Correspondence Rules.[2]  Anderson objects, in particular, to provisions in BP-03.91 that deny access to "sexually explicit" images through the mail.[3]

Collier has provided a copy of BP-03.91, which was revised most recently on June 25, 2021.[4]  The Uniform Inmate Correspondence

---

[1]Complaint, Docket Entry No. 1, p. 1 ¶ 3.  For purposes of identification all page numbers refer to the pagination imprinted on each docket entry by the court's electronic case filing system, ECF.

[2]See Board Policy-Uniform Inmate Correspondence Rules, BP-03.91 (rev. 5) dated June 25, 2021, Exhibit A to Defendant's Original Motion to Dismiss, Docket Entry No. 11-1, pp. 3-17.  A court may review documents attached to a motion to dismiss under Fed. R. Civ. P. 12(b) if the complaint refers to the documents and they are central to the plaintiff's claim.  See Kane Enterprises v. MacGregor (USA) Inc., 322 F.3d 371, 374 (5th Cir. 2003) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)); see also Adams v. Columbia/HCA of New Orleans, Inc., — F.4th —, 2023 WL 2346241, at *2 n.4 (5th Cir. 2023).

[3]Complaint, Docket Entry No. 1, p. 2 ¶ 9.

[4]See BP-03.91 (rev. 5) dated June 25, 2021, Exhibit A to Defendant's Original Motion to Dismiss, Docket Entry No. 11-1.

-3-

Rules found in BP-03.91 were established to regulate "written contact between inmates and the inmates' families and friends."[5] BP-03.91 requires all incoming or outgoing general correspondence to be inspected by unit mailroom staff.[6]  General correspondence that contains "clippings, photographs, or similar items, shall be disapproved for mailing or receipt" if the correspondence falls as a whole, or in significant part, into a number of restricted categories, including content that contains "a sexually explicit image."[7]  A sexually explicit image is defined as follows:

> "Sexually Explicit Image" refers to material in publications, photographs, drawings, or any type of image, which depicts sexual behavior, is intended to cause sexual excitement or arousal, or shows: frontal nudity of either gender, including the exposed female breast(s) with nipple(s) or areola(s); the genitalia, anus, or buttocks, or partially covered buttocks of either gender; the discharge of bodily fluids in the context of sexual activity; or sexual behavior from any vantage point.  The chests of infants and pre-pubescent children are not considered breasts, unless further restricted by a treatment program policy.[8]

Publications, which are subject to review on a case-by-case basis, may also be rejected if found to contain sexually explicit images.[9] However, "publications constituting educational, medical,

---

[5] Id. at 3.

[6] Id. at 12.  These restrictions apply only to "General Correspondence," which is defined as "any mail sent to or from a general correspondent or not otherwise included in the definitions of legal, media, or special correspondence."  Id. at 4.

[7] Id. at 12.

[8] Id. at 5.

[9] Id. at 14 ¶ 1.f.

scientific, or artistic materials, including anatomy medical reference books, general practitioner reference books or guides, National Geographic, or artistic reference material depicting historical, modern, or post-modern era art, may be permitted."[10]

Anderson alleges that BP-03.91 is "overly and unnecessarily broad" in scope because it restricts "any type of image (photographs, drawings) of adult, consenting humans in alluring, revealing, or scantily clad clothing, where such a severe restriction furthers no legitimate government purposes."[11]   He alleges that the policy has resulted in the denial of "art books such as [Leonardo] da Vinci's Sketchbook, which is a compilation of line drawings and sketches; the Kimble Art Museum's photo tour book; family photos where some subjects wear bathing suits and bikinis; as well as commercially produced photos of models in various states of dress."[12]   Anderson also complains that the policy limits the number of photographs or drawings that an inmate can receive in one envelope to 10.[13]

---

[10]Id.

[11]Complaint, Docket Entry No. 1, p. 2 ¶ 9.

[12]Id.

[13]Id. at 3 ¶ 11.   Anderson complained that BP-03.91 also unfairly restricts sex offenders from advertising on "'Pen-Pal' website[s]."   Id. at 2 ¶ 10.   Anderson, who acknowledges that he is not a sex offender, has voluntarily abandoned this claim and his related request for injunctive relief.   See Plaintiff's Response, Docket Entry No. 24, p. 19 ¶¶ 79-80.

Anderson contends that the overly restrictive nature of BP-03.91 violates the "First Amendment right to freedom of speech,"[14] and he seeks declaratory relief.[15] Anderson also seeks injunctive relief in the form of a revision to BP-03.91 that would redefine prohibited content to include "only images that have been judicially defined as obscene or that are obviously illegal, or where the prisoner is actively enrolled in a rehabilitative program where possession of photos has been specifically determined to have a detrimental effect on rehabilitation."[16] In addition, he asks that the restriction that imposes the 10-photograph limit per envelope be eliminated.[17]

Collier argues that the claims against him in his official capacity are barred by the Eleventh Amendment.[18] Collier also argues that Anderson lacks standing to seek relief.[19] In addition, Collier argues that Anderson's First Amendment claim must be dismissed because it is foreclosed by Fifth Circuit precedent.[20]

_____

[14]Complaint, Docket Entry No. 1, p. 2 ¶ 10.

[15]Id. at 3 ¶ 12.

[16]Id. at 3 ¶ 13.A.

[17]Id. ¶ 13.C.

[18]Defendant's Original Motion to Dismiss, Docket Entry No. 11, pp. 4-7.

[19]Id. at 7-9.

[20]Defendant's Amended Motion to Dismiss, Docket Entry No. 26, pp. 3-7.

Anderson has filed a response to Defendant's Original Motion to Dismiss and Defendant's Amended Motion to Dismiss,[21] and Collier has filed a reply.[22] Anderson has submitted two requests for leave to file a sur-reply.[23] Although they are not prohibited by this court's local rules, sur-replies are "highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter." Lacher v. West, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001); see also Warrior Energy Services Corp. v. ATP Titan M/V, 551 F. App'x 749, 751 n.2 (5th Cir. 2014) (per curiam) (citation omitted).    District courts may, as a matter of discretion, allow a party to file a sur-reply when new legal theories or new evidence are presented by the movant at the reply stage. See Embry v. Hibbard Inshore, L.L.C., 803 F. App'x 746, 749 (5th Cir. 2020) (per curiam) (citing Austin v. Kroger Texas, L.P., 864 F.3d 326, 336 (5th Cir. 2017) (per curiam)); see also Silo Restaurant Inc. v. Allied Property and Casualty Insurance Co., 420 F. Supp. 3d 562, 571 (W.D. Tex. 2019) (recognizing that "granting leave to file a sur-reply in extraordinary circumstances 'on a showing of good cause' is a viable alternative to the general practice to summarily deny or exclude 'all arguments and issues first raised in reply briefs'").

---

[21]Plaintiff's Response, Docket Entry No. 24; Plaintiff's Amended Response, Docket Entry No. 43.

[22]Defendant's Reply, Docket Entry No. 44.

[23]Plaintiff's Motion to File Sur-Reply, Docket Entry No. 45; Plaintiff's Second Motion to File Sur-Reply, Docket Entry No. 51.

Review of Collier's reply shows that he does not raise new legal theories or new argument, but provides clarification of legal issues surrounding Anderson's First Amendment claim and supplemental authority.[24]   A litigant's <u>pro se</u> status, standing alone, is not an extraordinary circumstance.  Nevertheless, because Anderson represents himself, the court will consider his proposed sur-reply, which addresses Collier's previous argument that Anderson's First Amendment claim is foreclosed by Fifth Circuit precedent.[25]

## II.   <u>Standards of Review</u>

### A.   Motions to Dismiss Under Rule 12(b)(1)

Collier has moved to dismiss the Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter

---

[24]Defendant's Reply, Docket Entry No. 44, pp. 4-6.  Anderson has requested access to paper copies of several cases with electronic Westlaw citations listed in Defendant's Reply, noting that the Texas prison system does not give inmates access to Westlaw.  <u>See</u> Plaintiff's Second Supplemental Motion for Access to Caselaw Authorities Available Only in Electronic Databases and Other Access-Limited Publications in Hardcopy Form, Docket Entry No. 46, pp. 1-2.  Anderson has advised the court that he obtained access to these cases through an "'e-tablet'" system with a "law library application" that offers Lexis/Nexis to Texas prisoners.  <u>See</u> Plaintiff's Advisory Notice to the Court Concerning His Access to Caselaw Authorities Available Only in Electronic Databases and Other Access-Limited Publications, Docket Entry No. 52, p. 2 ¶ 6, p. 3 ¶ 11 (referring to several cases cited by Collier with their respective Lexis/Nexis citations).  Accordingly, Anderson's motion for access to caselaw with electronic Westlaw citations will be denied as moot.

[25]Plaintiff's Sur-Reply, Exhibit A to Plaintiff's Second Motion to File Sur-Reply, Docket Entry No. 51, pp. 20-27 ¶¶ 17-46.

jurisdiction.  Federal courts are "courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred by Congress.'"  Halmekangas v. State Farm Fire and Casualty Co., 603 F.3d 290, 292 (5th Cir. 2010).  "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'"  Smith v. Regional Transit Authority, 756 F.3d 340, 347 (5th Cir. 2014) (quoting Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005)).

Dismissal under Rule 12(b)(1) is appropriate if the plaintiff lacks the requisite standing to sue.  See, e.g., Little v. KPMG LLP, 575 F.3d 533, 540-41 (5th Cir. 2009) (affirming dismissal for lack of standing under Rule 12(b)(1)).  When a Rule 12(b)(1) challenge is raised with other Rule 12 challenges, the court should consider the Rule 12(b)(1) arguments before addressing any attack on the merits.  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (citing Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

## B.   Motions to Dismiss Under Rule 12(b)(6)

Collier has also moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.  To withstand a

-9-

motion to dismiss under Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (citation omitted).  If the complaint has not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed.  Id. at 1974.

In reviewing a motion under Rule 12(b)(6), a court must "'accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff.'"  Bustos v. Martini Club, Inc., 599 F.3d 458, 461 (5th Cir. 2010) (citation omitted). However, a reviewing court need not accept as true any "conclusory allegations, unwarranted factual inferences, or legal conclusions." Ferrer v. Chevron Corp., 484 F.3d 776, 780 (5th Cir. 2007) (citation and internal quotation marks omitted).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965).

Because he proceeds pro se, the plaintiff's pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed[.]'") (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)).  Nevertheless, a plaintiff's factual allegations "must be enough to raise a right to relief

-10-

above the speculative level[.]" <u>Twombly,</u> 127 S. Ct. at 1965.  If
the plaintiff's complaint has not set forth "enough facts to state
a claim to relief that is plausible on its face," it must be
dismissed.  <u>Id.</u> at 1974.

### III.  <u>Discussion</u>

**A.  Standing**

Collier argues that this action should be dismissed for lack
of  subject-matter  jurisdiction  because  Anderson  does  not
demonstrate that he has standing to challenge BP-03.91.[26]  Lack of
standing implicates federal subject-matter jurisdiction, which is
limited by Article III of the United States Constitution to "cases"
and "controversies."  U.S. Const. art. III, § 2.  <u>See California v.</u>
<u>Texas,</u> 141 S. Ct. 2104, 2113 (2021) (noting that a federal court's
power to adjudicate a case "includes the requirement that litigants
have standing").  To satisfy these elements a plaintiff seeking
injunctive  or  declaratory  relief  must  have  (1)  suffered  an
injury-in-fact  that  is  concrete  and  actual  or  imminent,  not
hypothetical;  (2)  that  is  fairly  traceable  to  the  defendant's
actions;  and  (3)  that  is  likely  to  be  redressed  by  a  favorable
decision.  <u>See Lujan v. Defenders of Wildlife,</u> 112 S. Ct. 2130,
2136 (1992).  At the motion-to-dismiss stage "the plaintiff must
clearly . . . allege facts demonstrating each element."  <u>Spokeo,</u>

---

[26]Defendant's Original Motion to Dismiss, Docket Entry No. 11,
pp. 8-9.

<u>Inc. v. Robins,</u> 136 S. Ct. 1540, 1547 (2016) (internal quotation marks omitted).

Collier contends that Anderson has not stated an "injury in fact" because he has not alleged facts showing that any of his mail has been denied or that he has been personally affected by BP-03.91.[27] To satisfy the injury-in-fact requirement, a plaintiff must plead that "he has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct. <u>Abdullah v. Paxton,</u> 65 F.4th 204, 208 (5th Cir. 2023) (quoting <u>City of Los Angeles v. Lyons,</u> 103 S. Ct. 1660, 1665 (1983)). An "injury-in-fact" for purposes of Article III standing must be "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical[.]" <u>Lujan,</u> 112 S. Ct. at 2136 (internal quotation marks and citations omitted). Allegations of a "'possible' future injury" will not suffice. <u>Abdullah,</u> 65 F.4th at 208 (citation omitted).

Anderson, who purports to bring this suit "on behalf of himself and those similarly situated, or who will become similarly situated in the future,"[28] does not allege facts in his Complaint showing that any of his mail has been confiscated or denied for violating BP-03.91. In response to the Defendant's Original Motion to Dismiss, Anderson alleges for the first time that there is a

_____

[27]Defendant's Original Motion to Dismiss, Docket Entry No. 11, p. 8.

[28]Complaint, Docket Entry No. 1, p. 1 ¶ 4.

-12-

file in possession of mailroom staff at the Estelle Unit that contains items sent to him that have been denied pursuant to BP-03.91.[29] Anderson provides no details and does not describe the items, but characterizes them as "photos" and "books" that were banned under BP-03.91 and its restriction on sexually-explicit material.[30] He makes no mention of any correspondence that was rejected for exceeding the limit on 10 photographs per envelope. Anderson argues that he was not required to allege these facts or include them in his Complaint because prisoners are not required to plead exhaustion, referencing Jones v. Bock, 127 S. Ct. 910 (2007).[31]

Because failure to exhaust is an affirmative defense, Anderson is correct that prisoners are not required to plead facts showing that they exhausted their administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). See Jones, 127 S. Ct. at 921. Exhaustion of administrative remedies is not an issue in this case. As the party invoking federal jurisdiction, Anderson has the burden of establishing standing. See State of Texas v. United States, 50 F.4th 498, 513 (5th Cir. 2022); see also Barber v. Bryant, 860 F.3d 345, 352 (5th Cir. 2017) ("Plaintiffs always have the burden to establish

---

[29]Plaintiff's Response, Docket Entry No. 24, p. 20 ¶ 88 & n.19.

[30]Id.

[31]Id. at 19 ¶ 84.

-13-

standing.") (citing <u>Lujan,</u> 112 S. Ct. at 2136)).  "Plaintiffs in the federal courts 'must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction.'"  <u>O'Shea v. Littleton,</u> 94 S. Ct. 669, 675 (1974) (quoting <u>Linda R.S. v. Richard D.,</u> 93 S. Ct. 1146, 1148 (1973)).

The pending Complaint does not allege facts showing that any of Anderson's correspondence or publications have been denied for containing sexually explicit images or for exceeding the limit of 10 photographs per envelope.  Anderson has not otherwise provided details showing that any specific publication or piece of correspondence was denied to him by prison personnel under BP-03.91.  Because Anderson has not established that he has suffered the requisite injury-in-fact, his Complaint is subject to dismissal for lack of subject-matter jurisdiction.

Anderson has requested leave to amend so that he can address the deficiencies outlined by Collier.[32]  Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint shall be freely granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, a court has discretion to deny leave to amend for reasons of undue delay, repeated failures to cure deficiencies, undue prejudice, or futility.  <u>See, e.g., Foman v. Davis,</u> 83 S. Ct. 227, 230 (1962); <u>Thompson v. Texas Dep't of</u>

---

[32]<u>See id.</u> at 22-23 ¶¶ 96-102 & n.22; Plaintiff's Amended Response, Docket Entry No. 43, p. 26 ¶¶ 83-84.

-14-

<u>Criminal Justice,</u> 67 F.4th 275, 283 (5th Cir. 2023) (citation omitted). Anderson has not submitted a proposed amended complaint for the court's consideration. The court declines to grant leave to amend because, even assuming that all of his allegations are true, doing so would be futile for the reasons discussed below.

## B.   Official Immunity

Collier argues that Anderson's claim against him in his official capacity as a state employee is barred by the Eleventh Amendment.[33] Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state, including a state agency. <u>See Will v. Michigan Dep't of State Police,</u> 109 S. Ct. 2304, 2309 (1989). It is well established that inmates cannot sue TDCJ officers or officials under § 1983 for monetary damages in their official capacity. <u>See Loya v. Texas Department of Corrections,</u> 878 F.2d 860, 861 (5th Cir. 1989) (per curiam) ("[TDCJ's] entitlement to immunity under the [E]leventh [A]mendment is clearly established in this circuit."); <u>Oliver v. Scott,</u> 276 F.3d 736, 742 (5th Cir. 2002) ("[T]he Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity.").

Anderson does not seek monetary damages in this case. He seeks declaratory and prospective injunctive relief. There is a narrow exception to Eleventh Amendment immunity that applies to

---

[33]Defendant's Original Motion to Dismiss, Docket Entry No. 11, p. 4.

claims for prospective injunctive relief from a state actor, in his official capacity, based on an ongoing violation of the federal constitution.   See Ex parte Young, 28 S. Ct. 441, 445 (1908) (crafting an exception to official immunity in suits for enjoining unconstitutional actions); see also K.P. v. LeBlanc, 729 F.3d 427, 439 (5th Cir. 2013) (discussing the exception created by Ex parte Young); Okpalobi v. Foster, 244 F.3d 405, 415 (5th Cir. 2001) (characterizing the rationale in Ex parte Young as a "narrow" exception to Eleventh Amendment immunity).   Anderson fails to show that he fits within this narrow exception because, for reasons that follow, he does not establish an ongoing constitutional violation.[34]

## C.   First Amendment Claims

Collier argues that Anderson's First Amendment claim is foreclosed by existing precedent.[35]   The Supreme Court has emphasized that "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner."   Overton v. Bazzetta, 123 S. Ct. 2162, 2167 (2003).   Prisoners do not retain rights that are "inconsistent with proper incarceration."   Id.

---

[34]Because Anderson fails to establish that he has a valid First Amendment claim, the court need not reach the additional arguments raised by Collier about whether he is entitled to official immunity because he is not personally responsible for enforcing BP-03.91 within TDCJ or that the requested injunctive relief exceeds the PLRA.   See Defendant's Original Motion to Dismiss, Docket Entry No. 11, pp. 4-7.

[35]Defendant's Amended Motion to Dismiss, Docket Entry No. 26, pp. 3-7.

-16-

Thus, prison officials may place limits on the First Amendment rights of prisoners provided that the regulations are "'reasonably related' to legitimate penological interests." <u>Turner v. Safley</u>, 107 S. Ct. 2254, 2261 (1987); <u>see also Thornburgh v. Abbott,</u> 109 S. Ct. 1874, 1881 (1989) (holding that regulations on incoming prisoner mail must be analyzed "under the <u>Turner</u> reasonableness standard"). This deferential inquiry, which focuses on the reasonableness of the regulation, was expressly adopted with the recognition that "prison administrators . . ., and not the courts, [are] to make the difficult judgments concerning institutional operations." <u>Turner,</u> 107 S. Ct. at 2261.

To determine the reasonableness of a regulation that imposes on the First Amendment rights of prisoners, courts typically consider four factors outlined by the Supreme Court in <u>Turner</u> (the "<u>Turner</u> factors") by determining: (1) whether there is a valid, rational connection between the regulation and the legitimate, neutral governmental interest used to justify it; (2) whether there exists alternative means for prisoners to exercise the constitutional right at issue; (3) the impact of an accommodation on prison staff, inmates, and allocation of prison resources; and (4) whether any alternative exists that would fully accommodate prisoners' rights at <u>de minimis</u> cost to valid penological interests. <u>Turner,</u> 107 S. Ct. at 2262. Of these factors, the first one is frequently dispositive. <u>See, e.g., Beard v. Banks,</u> 126 S. Ct. 2572, 2580 (2006) (observing that in some cases the

-17-

second, third, and fourth <u>Turner</u> factors may "add little, one way or another, to the first factor's basic logical rationale"); <u>see also Mayfield v. Texas Dep't of Criminal Justice,</u> 529 F.3d 599, 607 (5th Cir. 2008) (observing that "rationality is the controlling factor, and a court need not weigh each factor equally") (citing <u>Scott v. Mississippi Dep't of Corrections,</u> 961 F.2d 77, 81 (5th Cir. 1992)).

The Uniform Inmate Correspondence Rules found in BP-03.91 were developed in connection with a prisoner class action lawsuit that was filed in 1971 to challenge the constitutionality of correspondence rules and practices then in effect in the Texas prison system. <u>See Guajardo v. Estelle,</u> Civil Action No. H-71-0570 (S.D. Tex.). After extensive litigation in the Southern District of Texas and more than one appeal to the Fifth Circuit, the district court issued a Memorandum and Order and entered a Final Judgment approving an agreed settlement that imposed a consent decree. <u>See Guajardo v. Estelle,</u> 568 F. Supp. 1354, 1355-56 (S.D. Tex. 1983) (discussing the history of the <u>Guajardo</u> litigation and the negotiated settlement). In one of those appeals, the Fifth Circuit considered the authority of prison officials to censor incoming publications that were pornographic. <u>See Guajardo v. Estelle,</u> 580 F.2d 748 (5th Cir. 1978), overruled in part by <u>Thornburgh,</u> 109 S. Ct. at 1882.[36]   The Fifth Circuit expressly

---

[36]Collier correctly notes that the legal standard applied by the Fifth Circuit for determining the validity of prison (continued...)

-18-

rejected the district court's ruling that prison authorities could not ban sexually explicit magazines unless they had been judicially declared obscene. Id. at 761-62. The Fifth Circuit concluded that prison officials could limit access to sexually explicit materials pursuant to a legitimate rehabilitative interest in preventing "deviate, criminal sexual behavior" within the prison population. Id. at 762.

TDCJ's policy of screening and withholding sexually explicit materials was upheld again in Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). A Texas inmate had claimed that his First Amendment rights were violated when certain books and magazines were withheld from him under the prison correspondence rules because they were deemed to encourage deviate, criminal sexual behavior. Id. at 204. The Fifth Circuit concluded that the inmate's claims were foreclosed by Guajardo and by Supreme Court precedent recognizing that a prisoner retains First Amendment rights not inconsistent with his prisoner status or the prison's legitimate penological objectives. Id. at 206-07. The Fifth Circuit observed that the practice of limiting sexually oriented

---

36(...continued)
regulations in Guajardo, 580 F. 2d at 753, which relied on Procunier v. Martinez, 94 S. Ct. 1800 (1974), was overruled in part by Thornburgh, 109 S. Ct. at 1882, and has been replaced with the deferential "reasonableness" standard adopted by the Supreme Court in Turner, 107 S. Ct. at 2261-262. See Defendant's Reply, Docket Entry No. 44, p. 4. Thus, while the remaining portion of the Fifth Circuit's decision in Guajardo remains valid, the decision must now be read in light of the standard enunciated in Turner and Thornburgh. See Brewer v. Wilkinson, 3 F.3d 816, 824 (5th Cir. 1993).

-19-

materials embodied in the correspondence rules, as approved in Guajardo, strikes a balance between the prison's rehabilitation and security objectives, easily satisfying the reasonableness standard established by the Supreme Court in Turner and Thornburgh. Id. at 207. As a result, prison officials can limit an inmate's access to sexually explicit materials consistent with the First Amendment even if the materials are not obscene. Id. at 205-06.

In a Memorandum and Order entered on September 24, 2002, the district court terminated the consent decree that had been granted as prospective relief in the Guajardo class-action case. See Guajardo, Civil Action No. H-71-0570 (S.D. Tex.) (Docket Entry No. 1059); see also Guajardo v. Texas Dep't of Criminal Justice, 363 F.3d 392, 394 (5th Cir. 2004) (per curiam) (affirming the district court's decision to terminate the consent decree after finding that system-wide prospective relief was no longer warranted under the PLRA).[37] Anderson mistakenly argues that terminating the consent decree negates the Fifth Circuit's Guajardo caselaw as

---

[37]As the Fifth Circuit observed, "[t]he PLRA strongly disfavors continuing relief through the federal courts; indeed, its 'fundamental purpose' was to extricate them from managing state prisons." Guajardo, 363 F.3d at 394 (citation omitted). The PLRA provides that "[i]n any civil action with respect to prison conditions in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervener" if the order has been in effect for a certain period of time, unless "the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." 18 U.S.C. § 3626(b)(1) and (3).

precedent.[38] <u>See Inmates of Suffolk County Jail v. Rouse,</u> 129 F.3d 649, 662 (1st Cir. 1997) ("While terminating a consent decree strips it of future potency, the decree's past puissance is preserved and certain of its collateral effects may endure."); <u>Benjamin v. Jacobson,</u> 172 F.3d 144, 159 (2d Cir. 1999) ("We like- wise see no indication in the [PLRA] itself or in its legislative history that Congress meant past consent decrees to be annulled and stripped of all past significance or collateral effect.").

After the <u>Guajardo</u> consent decree was terminated, the Fifth Circuit has continued to reject First Amendment challenges to the TDCJ prison policy prohibiting sexually explicit materials.  <u>See</u> <u>Stroble v. Livingston,</u> 538 F. App'x 479, 480 (5th Cir. 2013) (per curiam) (rejecting a Texas prisoner's First Amendment challenge to prison officials' interpretation of the policy regarding sexually explicit images as frivolous).  In <u>Stroble</u> the Fifth Circuit repeated its holding that "[t]o further the legitimate interest in preventing deviate, criminal sexual behavior in the prison population, prison officials may limit prisoners' access to sexually explicit materials even if they are not obscene." <u>Id.</u> (citing <u>Thompson,</u> 985 F.2d at 205-06).

District courts within the Fifth Circuit have consistently dismissed First Amendment challenges to BP-03.91 for failure to

---

[38]Plaintiff's Amended Response, Docket Entry No. 43, pp. 10-12 ¶¶ 31-34; Plaintiff's Sur-Reply, Exhibit A to Plaintiff's Second Motion to File Sur-Reply, Docket Entry No. 51, p. 22 ¶ 28.

state a claim as foreclosed by Fifth Circuit precedent, holding that BP-03.91 and the restriction on sexually explicit images furthers legitimate penological interests and is not unconstitutional. See Rodriguez v. Bell, Civil Action No. 2:14-CV-447, 2014 WL 9909548, at *5 (S.D. Tex. Dec. 17, 2014), Memorandum and Recommendation adopted, 2015 WL 3756509 (S.D. Tex. June 16, 2015); Ibenyenwa v. Texas Board of Criminal Justice, Civil Action No. 9:19cv1, 2022 WL 2815313, at *3 (E.D. Tex. March 31, 2022), Report and Recommendation adopted, 2022 WL 2813720 (E.D. Tex. July 18, 2022); McCullough v. O'Daniel, Civil Action No. 2:21-CV-00176, 2022 WL 3219802, at *7 (S.D. Tex. July 6, 2022), Memorandum and Recommendation adopted, 2022 WL 3212933 (S.D. Tex. Aug. 8, 2022); Thompson v. Lumpkin, Civil Action No. 2:21-CV-00154, 2022 WL 4110926, at *8 (S.D. Tex. July 6, 2022), Memorandum and Recommendation adopted, 2022 WL 4110160 (S.D. Tex. Sept. 7, 2022); Teixeira v. O'Daniel, No. A-22-CV-1155-RP, 2023 WL 3082350, at *4 (W.D. Tex. Apr. 25, 2023); Greer v. Collier, Civil Action No. H-21-3976, 2023 WL 3628272, at *7-8 (S.D. Tex. May 23, 2023).

A district court in Louisiana also recently rejected an inmate's challenge to a similar ban on sexually explicit materials by the Louisiana Department of Corrections, observing that the Fifth Circuit has repeatedly rejected arguments similar to those raised by Anderson:

> The Fifth Circuit has repeatedly rejected arguments like those made by Mills in his challenge to the discretionary

> interpretation and application of DOC regulations
> prohibiting sexually explicit materials. Mills'
> disagreement with DOC's definition of sexually explicit
> material is insufficient to establish that the regulation
> is not rationally based on a legitimate penological goal,
> including the protection of female guards and prevention
> of inappropriate sexual behavior among inmates. Likewise,
> his assertion that DOC officials' definition of sexually
> explicit includes material that is not erotic or meant to
> sexually excite the reader is insufficient. As the Fifth
> Circuit has made clear, there is no requirement that
> prison regulations only prohibit materials that would be
> considered obscene.[] Some pictures depicting women in
> swimwear, lingerie, and suggestive poses can be sexually
> explicit even without being blatantly erotic or obscene.

Mills v. LeBlanc, Civil Action No. 21-418, 2021 WL 3572148, at *17 (E.D. La. July 15, 2021) (footnote omitted), Report and Recommendation adopted, 2021 WL 3566434 (E.D. La. Aug. 11, 2021). The Fifth Circuit has affirmed the decision, holding that the district court correctly dismissed the prisoner's challenge to policies restricting materials that could compromise the safety of inmate population and rehabilitation interests. See Mills v. Leblanc, No. 21-30589, 2022 WL 3287961, at *1 (5th Cir. Aug. 11, 2022) (per curiam) (unpublished). Because the Fifth Circuit has consistently rejected challenges to prison regulations restricting sexually explicit materials, Anderson's First Amendment challenge to BP-03.91 fails to state a claim.

Anderson has not otherwise alleged specific facts showing that he has been affected by the limitation on the number of acceptable photographs per mailing or that this limitation is unrelated to a legitimate penological interest. See Overton, 123 S. Ct. at

2167-68 (courts are required to accord "substantial deference to the professional judgment of prison administrators" and the burden is on the prisoner to disprove the validity of prison regulations); Beard, 126 S. Ct. at 2576 (noting that a plaintiff seeking to overcome the deference courts must show to prison officials must allege specific facts that would warrant a decision in his favor). Accordingly, the Defendant's Amended Motion to Dismiss will be granted, and this case will be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because the court has considered all of the plaintiff's submissions and concludes that he has pled his best case, the dismissal will be with prejudice.  See Brown v. Taylor, 829 F.3d 365, 370 (5th Cir. 2016).

## IV.  Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1.  Defendant Collier's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket Entry No. 11) and Defendant Collier's Amended Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket Entry No. 26) are **GRANTED**.

2.  Plaintiff's First Motion for an Extension of Time to File Sur-Reply to Defendant's Reply to Plaintiff's Response to Defendant's Amended Motion to Dismiss (Docket Entry No. 45) and Plaintiff's Motion for Leave to File a Sur-Reply to Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss (Docket Entry No. 51) are **GRANTED**.

3.  Plaintiff's Second Supplemental Motion for Access to Caselaw Authorities Available Only in Electronic

-24-

Databases and Other Access-Limited Publications in Hardcopy Form (Docket Entry No. 46) is **DENIED as moot**.

4.    This case will be dismissed with prejudice.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 18th day of July, 2023.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE