United States District Court
Southern District of Texas
**ENTERED**
January 30, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BRENT ANDERSON TDCJ # 1474470,  §
§
§
Plaintiff,  §
§
v.  §   CIVIL ACTION NO. H-21-3154
§
BRYAN COLLIER, <u>et al.,</u>  §
§
Defendants.  §

### MEMORANDUM OPINION AND ORDER

The plaintiff, Brent Anderson (TDCJ #1474470), has filed an Amended Complaint (Docket Entry No. 77) under 42 U.S.C. § 1983 against Executive Director Bryan Collier of the Texas Department of Criminal Justice ( "TDCJ") and two TDCJ employees challenging the validity and enforcement of a policy on prisoner correspondence. Now pending is the defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12 (b)(6) ("Defendants' Motion to Dismiss")(Docket Entry No. 78). Anderson has filed Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b) (6) ("Plaintiff's Response") (Docket Entry No. 82). After considering all of the pleadings and the applicable law, the court will grant the motion to dismiss filed by the defendants for the reasons explained below.

### I. Background

Anderson is currently incarcerated by TDCJ at the Ellis Unit

in Huntsville, where he is serving a sentence of life without parole for a capital murder conviction from Matagorda County. See Anderson v. State, No. 13-07-00752-CR, 2009 WL 2915011 (Tex. App. - Corpus Christi-Edinburg Aug. 27, 2009, pet. ref'd). He has filed this civil rights lawsuit against Executive Director Collier and two TDCJ employees to challenge TDCJ Board Policy 03.91 ( "BP-03. 91"), which is also known as the Uniform Inmate Correspondence Rules. See Board Policy Uniform Inmate Correspondence Rules, BP-03.91 (rev. 5) dated June 25, 2021, Exhibit A to Defendant's Original Motion to Dismiss, Docket Entry No. 11-1, pp. 3-17.[1] Anderson objects, in particular, to provisions in BP-03.91 that deny access to sexually explicit images through the mail, Amended Complaint, Docket Entry No. 77, pp. 6-8.

The rules found in BP-03. 91 were established to regulate "written contact between inmates and the inmates' families and friends." Id. at 3. BP-03.91 requires all incoming or outgoing general correspondence to be inspected by unit mailroom staff. General correspondence that contains "clippings, photographs, or similar items, shall be disapproved for mailing or receipt" if the correspondence falls as a whole, or in significant part, into a

---

[1] A court may review documents attached to a motion to dismiss under Fed. R. Civ. P. 12(b) if the complaint refers to the documents and they are central to the plaintiff's claim. See Kane Enterprises v. MacGregor (USA) Inc. , 322 F. 3d 371, 374 ( 5th Cir. 2003) ( citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)); see also Adams v. Columbia/HCA of New Orleans, Inc., No. 22-30389, 2023 WL 2346241, at *2 n.4 (5th Cir. 2023).

number of restricted categories, including content that contains "a sexually explicit image."' A sexually explicit image is defined as follows:

> "Sexually Explicit Image" refers to material in publications, photographs, drawings, or any type of image, which depicts sexual behavior, is intended to cause sexual excitement or arousal, or shows: frontal nudity of either gender, including the exposed female breast(s) with nipple(s) or areola(s); the genitalia, anus, or buttocks, or partially covered buttocks of either gender; the discharge of bodily fluids in the context of sexual activity; or sexual behavior from any vantage point. The chests of infants and pre-pubescent children are not considered breasts, unless further restricted by a treatment program policy.

Id. At 5.  Publications, which are subject to review on a case-by-case basis, may also be rejected if found to contain sexually explicit images.  Id. at 14.  However, "publications constituting educational, medical, scientific, or artistic materials, including anatomy medical reference books, general practitioner reference books or guides, National Geographic, or artistic reference material depicting historical, modern, or post-modern era art, may be permitted. These restrictions apply only to "General Correspondence," which is defined as "any mail sent to or from a general correspondent or not otherwise included in the definitions of legal, media, or special correspondence." Id. at 4.

Anderson alleges that BP-03.91 is unconstitutionally overbroad. Anderson also complains that the policy limits the

number of photographs or drawings that an inmate can receive in one envelope to 10. Anderson also contends that the confiscation and destruction of material under the policy violates due process.  The defendants argue that Anderson fails to state a claim on which relief can be granted, and that they are entitled to qualified immunity.

## II. **Standard of Review**

The defendants move to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. To withstand a motion to dismiss under Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (citation omitted). If the complaint has not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. Id. at 1974.

In reviewing a motion under Rule 12 (b)(6) , a court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." Bustos v. Martini Club, Inc., 599 F.3d 458, 461 (5th Cir. 2010) (citation and internal quotation marks omitted). However, a reviewing court need not accept as true any "conclusory allegations, unwarranted factual inferences, or legal conclusions." Ferrer v. Chevron Corp., 484 F.3d 776, 780 (5th Cir. 2007)(citation and internal quotation marks omitted). In other words, "[t]hreadbare recitals of the elements of

-4-

a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 127 S. Ct. at 1965).

Because he proceeds pro se, the plaintiff's pleadings are held to a less stringent standard than those drafted by lawyers. <u>See</u> <u>Haines v. Kerner</u>, 92 S. Ct. 594, 596 (1972) (<u>per curiam</u>); <u>see also</u> <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed [.]'")(quoting <u>Estelle v. Gamble</u>, 97 S. Ct. 285, 292 (1976)). Nevertheless, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level[.]" <u>Twombly</u>, 127 S. Ct. at 1965. If the plaintiff's complaint has not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. <u>Id.</u> at 1974.

### III. <u>Analysis</u>

Anderson raises claims under the First and Fourteenth Amendments.

#### A.   <u>First Amendment</u>

A prison regulations that infringe an inmate's First Amendment rights is "valid if it is reasonably related to legitimate penological interests." <u>Shaw v. Murphy</u>, 121 S.Ct. 1475, 1477 (2001). Anderson argues that BP-03.91 is overbroad, banning not only pornographic images, but many non-obscene images containing nudity.

The Supreme Court has emphasized that "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." Overton v. Bazzetta, 123 S. Ct. 2162, 2167 (2003). Prisoners do not retain rights that are "inconsistent with proper incarceration." Id. Thus, prison officials may place limits on the First Amendment rights of prisoners provided that the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 107 S. Ct. 2254, 2261 (1987); see also Thornburgh v. Abbott, 109 S. Ct. 1874, 1881 (1989) (holding that regulations on incoming prisoner mail must be analyzed "under the Turner reasonableness standard"). This deferential inquiry, which focuses on the reasonableness of the regulation, was expressly adopted with the recognition that "prison administrators ... , and not the courts, [are] to make the difficult judgments concerning institutional operations." Turner, 107 S. Ct. at 2261.

To determine the reasonableness of a regulation that imposes on the First Amendment rights of prisoners, courts typically consider four factors outlined by the Supreme Court in Turner (the "Turner factors") by determining: (1) whether there is a valid, rational connection between the regulation and the legitimate, neutral governmental interest used to justify it; (2) whether there exists alternative means for prisoners to exercise the constitutional right at issue; (3) the impact of an accommodation on prison staff, inmates, and allocation of prison resources; and (4) whether any alternative exists that would fully accommodate

-6-

prisoners' rights at de minimis cost to valid penological
interests. Turner, 107 S. Ct. at 2262. Of these factors, the first
one is frequently dispositive. See, e.g., Beard v. Banks, 126 S.
Ct. 2572, 2580 (2006) (observing that in some cases the second,
third, and fourth Turner factors may "add little, one way or
another, to the first factor's basic logical rationale"); see also
Mayfield v. Texas Dep't of Criminal Justice, 529 F.3d 599, 607 (5th
Cir. 2008) (observing that "rationality is the controlling factor,
and a court need not weigh each factor equally") (citing Scott v.
Mississippi Dep't of Corrections, 961 F.2d 77, 81 (5th Cir. 1992)).

The Uniform Inmate Correspondence Rules found in BP-03.91 were
developed in connection with a prisoner class action lawsuit that
was filed in 1971 to challenge the constitutionality of
correspondence rules and practices then in effect in the Texas
prison system. See Guajardo v. Estelle, Civil Action No. H-71-0570
(S.D. Tex.). After extensive litigation in the Southern District
of Texas and more than one appeal to the Fifth Circuit, the
district court issued a Memorandum and Order and entered a Final
Judgment approving an agreed settlement that imposed a consent
decree. See Guajardo v. Estelle, 568 F. Supp. 1354, 1355-56 (S.D.
Tex. 1983) (discussing the history of the Guajardo litigation and
the negotiated settlement). In one of those appeals, the Fifth
Circuit considered the authority of prison officials to censor
incoming publications that were pornographic. See Guajardo v.
Estelle, 580 F.2d 748 (5th Cir. 1978), overruled in part by

-7-

Thornburgh, 109 S. Ct. at 1882. The Fifth Circuit expressly rejected the district court's ruling that prison authorities could not ban sexually explicit magazines unless they had been judicially declared obscene. Id. at 761-62. The Fifth Circuit concluded that prison officials could limit access to sexually explicit materials pursuant to a legitimate rehabilitative interest in preventing "deviate, criminal sexual behavior" within the prison population. 580 F.2d at 762.

TDCJ's policy of screening and withholding sexually explicit materials was upheld again in Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). A Texas inmate had claimed that his First Amendment rights were violated when certain books and magazines were withheld from him under the prison correspondence rules because they were deemed to encourage deviate, criminal sexual behavior. Id. at 204. The Fifth Circuit concluded that the inmate's claims were foreclosed by Guajardo and by Supreme Court precedent recognizing that a prisoner retains First Amendment rights not inconsistent with his prisoner status or the prison's legitimate penological objectives. 985 F.2d at 206-07. The Fifth Circuit observed that the practice of limiting sexually oriented materials embodied in the correspondence rules, as approved in Guajardo, strikes a balance between the prison's rehabilitation and security objectives, easily satisfying the reasonableness standard established by the Supreme Court in Turner and Thornburgh. Id. at 207. As a result, prison officials can limit an inmate's access to

-8-

sexually explicit materials consistent with the First Amendment even if the materials are not obscene. Id. at 205-06.

In a Memorandum and Order entered on September 24, 2002, the district court terminated the consent decree that had been granted as prospective relief in the Guajardo class-action case. See Guajardo, Civil Action No. H-71-0570 (S.D. Tex.) (Docket Entry No. 1059); see also Guajardo v. Texas Dep't of Criminal Justice, 363 F.3d 392, 394 (5th Cir. 2004) (per curiam) (affirming the district court's decision to terminate the consent decree after finding that system-wide prospective relief was no longer warranted under the PLRA). Anderson mistakenly argues that terminating the consent decree negates the Fifth Circuit's Guajardo case law. See Inmates of Suffolk County Jail v. Rouse, 129 F. 3d 649, 662 (1st Cir. 1997) ("While terminating a consent decree strips it of future potency, the decree's past puissance is preserved and certain of its collateral effects may endure."); Benjamin v. Jacobson, 172 F.3d 144, 159 (2d Cir. 1999) ("We likewise see no indication in the [PLRA] itself or in its legislative history that Congress meant past consent decrees to be annulled and stripped of all past significance or collateral effect.").

Since the Guajardo consent decree was terminated, the Fifth Circuit has continued to reject First Amendment challenges to the TDCJ prison policy prohibiting sexually explicit materials. See Stroble v. Livingston, 538 F. App'x 479, 480 (5th Cir. 2013) (per curiam) (rejecting a Texas prisoner's First Amendment challenge to

prison officials' interpretation of the policy regarding sexually explicit images as frivolous). In Stroble, the Fifth Circuit repeated its holding that "[t]o further the legitimate interest in preventing deviate, criminal sexual behavior in the prison population, prison officials may limit prisoners' access to sexually explicit materials even if they are not obscene." Id. (citing Thompson, 985 F.2d at 205-06).

District courts within the Fifth Circuit have consistently dismissed First Amendment challenges to BP-03.91 for failure to state a claim as foreclosed by Fifth Circuit precedent, holding that BP-03.91 and the restriction on sexually explicit images furthers legitimate penological interests and is not unconstitutional. See Rodriguez v. Bell, No. 2:14-CV-447, 2014 WL 9909548, at *5 (S.D. Tex. Dec. 17, 2014), Memorandum and Recommendation adopted, 2015 WL 3756509 (S.D. Tex. June 16, 2015); Ibenyenwa v. Texas Board of Criminal Justice, No. 9:19-cv-1, 2022 WL 2815313, at *3 (E.D. Tex. March 31, 2022), Report and Recommendation adopted, 2022 WL 2813720 (E.D. Tex. July 18, 2022); McCullough v. O'Daniel, No. 2:21-CV-00176, 2022 WL 3219802, at *7 (S.D. Tex. July 6, 2022), Memorandum and Recommendation adopted, 2022 WL 3212933 (S.D. Tex. Aug. 8, 2022); Thompson v. Lumpkin, No. 2:21-CV-00154, 2022 WL 4110926, at *8 (S.D. Tex. July 6, 2022), Memorandum and Recommendation adopted, 2022 WL 4110160 (S.D.

-10-

Tex. Sept. 7, 2022); Teixeira v. O'Daniel, No. A-22-CV-1155-RP,

2023 WL 3082350, at *4 (W.D. Tex. Apr. 25, 2023); Greer v. Collier,

No. H-21-3976, 2023 WL 3628272, at *7-8 (S.D. Tex. May 23,

2023). A district court in Louisiana also rejected an inmate's

challenge to a similar ban on sexually explicit materials by the

Louisiana Department of Corrections, observing that the Fifth

Circuit has repeatedly rejected arguments similar to those

raised by Anderson:

> The Fifth Circuit has repeatedly rejected
> arguments like those made by Mills in his
> challenge to the discretionary interpretation
> and application of DOC regulations prohibiting
> sexually explicit materials. Mills'
> disagreement with DOC's definition of sexually
> explicit material is insufficient to establish
> that the regulation is not rationally based on
> a legitimate penological goal, including the
> protection of female guards and prevention of
> inappropriate sexual behavior among inmates.
> Likewise, his assertion that DOC officials'
> definition of sexually explicit includes
> material that is not erotic or meant to
> sexually excite the reader is insufficient. As
> the Fifth Circuit has made clear, there is no
> requirement that prison regulations only
> prohibit materials that would be considered
> obscene.

Mills v. LeBlanc, No. 21-418, 2021 WL 3572148, at *17 (E.D. La.

July 15, 2021) (footnote omitted), Report and Recommendation

adopted, 2021 WL 3566434 {E.D. La. Aug. 11, 2021). The Fifth

Circuit affirmed the decision, holding that the district court

correctly dismissed the prisoner's challenge to policies

restricting materials that could compromise the safety of inmate

population and rehabilitation interests. See Mills V. Leblanc, No.

21-30589, 2022 WL 3287961, at *1 (5th Cir. Aug. 11, 2022) (per curiam) (unpublished). Because the Fifth Circuit has consistently rejected challenges to prison regulations restricting sexually explicit materials, Anderson's First Amendment challenge to BP-03.91 fails to state a claim.

## B. Due Process

Anderson also alleges that the confiscation and destruction of material banned under the policy deprived him of his property without due process.  In order to state a due process claim, Anderson must identify a protected property interest and a deprivation of that interest without due process.  Mathews v. Eldridge, 96 S.Ct. 893, 901-02 (1976).

The material in question violates TDCJ policy.  As noted above, the policy does not violate the First Amendment.  Therefore, materials obtained in violation of the policy are contraband.

In rejecting a virtually identical claim, a court in the Western District of Texas noted that "prisoners do not have a property interest in contraband."  Teixeira v. O'Daniel, No. A-22-CV-1155-RP, 2023 WL 3082350, at *6 (W.D. Tex. Apr. 25, 2023). The Court explained that BP 03.91 also provides notice that material is deemed to be in violation of the policy, and  process to appeal that decision.  Id. As a result, Anderson fails to identify either a protected property interest in the material, or a denial of due process.  He therefore fails to state a claim under the Fourteenth  Amendment.

-12-

## IV. <u>Conclusion</u>

For the reasons explained above, the defendants' motion to dismiss (Docket Entry No. 78) is **GRANTED** and the Amended Complaint (Docket Entry No. 77) will be dismissed with prejudice.

**SIGNED** at Houston, Texas, on this 30th day of January, 2026.

_____

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE
